6971, 6972. WILLIAMS *v.* CUMBERLAND FERTILIZER COMPANY; and *vice versa.*

1. When a promissory note is payable on a day certain at a bank, the maker has until the expiration of banking hours on the day of its maturity to pay it; but action thereon may be begun thereafter on the same day, if demand for payment be made and refused on that day. 3 R. C. L. 1335, § 567; 2 Daniel, Neg. Instr. (6th ed.) §§ 1208, 1219, pp. 1356, 1359; Vandesande *v.* Chapman, 48 Me. 262; Church *v.* Clark, 21 Pick. (Mass.) 310; Whitwell *v.* Brigham, 19 Pick. (Mass.) 117; *Blitch* v. *Brewer*, 83 *Ga.* 333, 335 (9 S. E. 837), and authorities cited.

(*a*) The holding in *Raefle* v. *Moore*, 58 *Ga.* 94 (3), that "A note payable one day after date becomes due on the day after it was made, and can not be sued until the day following," is not in conflict with the decision in *Blitch* v. *Brewer*, supra, or with the ruling here made, since no demand and refusal on the day of maturity appears in the former case. See also *Beach* v. *Atkinson*, 87 *Ga.* 288 (13 S. E. 591), which under the particular facts of the case is not in conflict with this decision.

(*b*) Under the undisputed facts in evidence, the action was commenced at 8 o'clock on the day of the maturity of the note, after the expiration of

business or banking hours, and after demand for payment of the note (payable by its terms at a bank) had been made and refused.

2. While the law appoints a particular person to make service of the copy summons which constitutes the process of a justice's court, the defendant can waive service by this particular person and accept it from another; and if he accepts it from the justice of the peace who issued the summons, he will be bound thereby.

3. There was no error in admitting in evidence the docket of the justice of the peace with the entry of judgment thereon, and also a later entry correcting or amending the previous entry, especially in view of uncontradicted testimony establishing the identical facts recited in the amended entry. If an entry of service on the original summons could be amended, or made nunc pro tunc, no good reason appears why a like entry on the docket of the magistrate could not also be amended or made nunc pro tunc.

4. The court did not err in directing a verdict finding the property subject to the fi. fa., as the verdict was demanded by the evidence. A proper plea for damages having, however, been interposed by the plaintiff in fi. fa., whether or not the evidence submitted authorized the inference that the claim had been interposed for delay only was a question for determination by the jury, and the court erred in declining to submit that issue with proper instructions.

DECIDED SEPTEMBER 21, 1916.

Levy and claim—appeal; from Whitfield superior court—Judge Fite. April 28, 1915.

*W. E. Mann, W. C. Martin,* for Williams.

*C. D. & F. K. McCutchen,* contra.

WADE, C. J. 1. The first ground of the motion to dismiss the levy alleges that "the note sued on shows upon its face that it was dated March 1, 1914, and due April 1, 1914, and that the suit in the justice's court was filed and summons issued on April 1, 1914, and that said suit was prematurely brought, and that the judgment of the court based thereon was void for this reason." The Supreme Court held in *Raefle* v. *Moore,* 58 *Ga.* 94, that "A note payable one day after date becomes due on the day after it was made, and can not be sued until the day following;" or in other words, that an action could not be maintained on a promissory note until after the close of the day of its maturity. It does not, however, appear in that case that the notes referred to in the decision were payable at a bank, or that payment was demanded of the maker and by him refused on the day the notes matured, and that the suit was thereupon instituted on the same day, but after the expiration of business hours or the banking hours of a bank at which the note was payable. In *Blitch* v. *Brewer,* 83 *Ga.* 333 (9

S. E. 837), a difference in the rule where there is a demand for payment and refusal, and where no such demand is made, is clearly recognized by Chief Justice Bleckley, who said: "Could it [an action], *without demand for payment and refusal* [italics ours], have been brought on the day the note became due? We think not, at least not within business hours." The learned Chief Justice likewise quotes with apparent approval the following statement of the law: "'There is strong reason for holding that a party bound to pay has the whole of the day of maturity; and that without demand and refusal, an action can not be maintained, unless it is brought after sunset, or perhaps after business hours, on that day.' 2 Parsons, N. & B. 460-1. 'We should consider the correct rule to be, that where the note is payable generally, it is not dishonored until the close of the day, and when payable at bank, not until the close of bank hours.' Ib. 417." "In the case of ordinary contracts to be performed upon a certain day, they are really solvable within that day; and as the promisor has the whole of the day for their performance, suit can not be commenced until that day has passed. But when the maker of a note, or the drawer or acceptor of a bill, makes it payable on a day certain, his contract is to pay it on demand on any part of that day, if made within reasonable hours. The protest must be made on that day, which presupposes a default already made; and whether it be the last day of grace, or the day of maturity, when there is no grace, it is clear, upon principle, that as soon as payment is refused, the action may be commenced. We are not aware of any decision which determines that the maker may be sued on the day of maturity, if the note is payable without grace, though the affirmative opinion has been expressed; but if payment has been demanded and refused, we should say that the action would lie, for the contract to pay on demand within reasonable hours is then broken, and, in the language of Parsons: 'He has declared he will not pay and can want further delay only to arrange the means of avoiding payment.' This view has been recently adopted in Pennsylvania. But there is still stronger reason to hold that the action may be commenced after demand and refusal on the last day of grace, for grace was originally matter of indulgence and courtesy, and not of contract, and it would seem unreasonable to extend indulgence after the maker has expressly refused to make

the payment on the last day allowed him. The weight of authority supports the view that suit may be commenced on the last day of grace against the maker; but there are decisions of most respectable character to the contrary effect—that suit can not be brought on the last day of grace, nor on the last day of maturity, when there is no grace." Daniel on Negotiable Instruments, §§ 1208, 1209, pp. 1356, 1357, 1358. "In some jurisdictions it is held that the maker or acceptor of paper payable at a bank has until the end of the day of maturity in which to pay, even after demand and dishonor and notice thereof, so that an action can not be brought until the day following, while in other jurisdictions it is held that an action may be brought, even without demand, at any time after banking hours on the day of maturity." 7 Cyc. 844 (6).

While we have been unable to find any precise ruling from our Supreme Court or this court to the effect that an action may be brought on a note payable at a bank at any time after banking hours on the day of maturity, even without demand, the right to bring such an action upon such a note on the day of its maturity, where there was a demand and refusal on that day, is apparently recognized in *Blitch* v. *Brewer*, supra. "As a general rule a suit brought on a promissory note on the day it falls due is premature, inasmuch as the maker has all of that day in which to pay it, but many cases hold that an action brought on the day the note falls due, after the same has been dishonored by the maker thereof failing to pay, . . . is not premature." 3 R. C. L. § 567, p. 1335.

Accepting as correct the doctrine laid down in *Raefle* v. *Moore*, supra, as qualified by the rule plainly indicated in *Blitch* v. *Brewer*, supra, and supported by numerous authorities cited above, since it clearly appears, from the testimony, that there was a demand for payment and a refusal to pay the note sued upon on the day of its maturity, and also that the note was payable at a bank, and was not actually paid on or before expiration of business or banking hours on the day the note matured, the action, which was brought at 8 o'clock p. m. on the day of the maturity of the note, was not premature; for not only would it have been impossible at that hour, unless by extraordinary efforts outside of the usual course of business, for the maker to pay the note at the bank where by its terms it was payable, but the refusal of the maker to pay it on the

36

very day of its maturity, in response to a demand for payment, effectually dispensed with the necessity for waiting until the day following before the institution of the action. No purpose could possibly have been served by further delay; for while the defendant had ordinarily until the close of the day of maturity to pay his obligation, his express refusal on that day to pay the note, under the circumstances of this case detailed above, clearly authorized the maintenance of the action.

2. The amended entry upon the docket of the magistrate recites that when the justice of the peace visited the defendant and explained that the constable could not be found, and inquired if he would require the court to appoint a special bailiff to make service of the summons, the defendant "told him 'No,' that he knew about the suit and would acknowledge service. Whereupon, the undersigned A. L. Meers [the justice of the peace] handed him an exact copy of the summons and note," etc. The amended entry further recites "that a true copy of the original summons and of the note was served personally upon J. T. Segers [the defendant in fi. fa.] by the undersigned justice of the peace," etc.; and further "that on the regular court day on the court grounds for the 628 District G. M., Whitfield county, Ga., on the 11th day of April, 1914, in open court, the above and foregoing case was sounded, the defendant J. T. Segers being present in person and heard the call of said case and announced to the court that he had no defense to the case and that he desired judgment entered. Whereupon judgment was entered by the court for the plaintiff against the defendant for the principal amount of said note and cost." The testimony of the justice of the peace at the trial of the claim case was that he "acquainted Mr. Segers of the fact that he had no bailiff, and he agreed to accept service by me." The defendant in fi. fa. himself testified: "I was served by the justice of the peace and accepted service in this case. I appeared in court and announced that I had no defense and that judgment might be entered." Taking all the amendments to the entry on the docket of the justice of the peace in connection with the testimony above recited, it is obvious that the amended entry, showing that the defendant in fi. fa. agreed to "acknowledge" service by the justice of the peace, was not an agreement to enter an acknowledgment or waiver of service, but an agreement to "accept"

the service by the justice of the peace in lieu of service by the officer appointed by law for that purpose. In *Bell* v. *Bowdoin,* 109 *Ga.* 209, 212 (34 S. E. 339), it was said: "On the trial of this issue the justice of the peace was offered as a witness, and testified that he issued the original summons and placed it in the hands of the constable, and that the constable handed it to him and requested that he serve it upon the defendant, if he would accept it as service. He met the defendant and told him of the request of the constable, and the defendant agreed to accept service from him. This testimony was objected to on the ground that by means thereof it was sought to prove a waiver of service of process, which was not in writing. We do not think that was the object of the testimony. The copy summons which the justice of the peace handed to the defendant was the process of the court, commanding him to appear at the time and place therein designated to answer, etc. The testimony did not seek to establish the fact that he waived this process, but it was simply to show that he received the process through an irregular channel, and that he accepted it as service. We see no reason to hold that a process thus served and accepted would not bind the defendant. While it is true the law appoints a particular person to make this service, still the defendant can waive service by this particular person and accept it from another. This summons informs him that a certain suit brought by a certain plaintiff against him is pending in a certain justice's court. That is the information the law desires to give him by having him served with a copy summons. If he accepts it from a person other than the one appointed by law to convey it to him, there is no good reason why he should not be bound thereby; and, on the trial of a traverse to an entry of service by the constable on the summons, we think such testimony is admissible to show in what manner the defendant was served." We are therefore of the opinion that the service upon the defendant in fi. fa. was sufficient to bind him as fully as if it had been made by a lawful constable. There is consequently no merit in the 2d, 3d, and 4th grounds of the motion to dismiss the levy upon the property claimed, for want of service, or because there was no acknowledgment of service.

3-4. It is unnecessary to discuss any other assignments of error covered by the headnotes. Judgment is affirmed on the main bill

of exceptions; and judgment is reversed on the cross-bill, because, in our opinion, the court erred in declining to allow counsel for the plaintiff in execution to submit to the jury for determination the question raised by the plea for damages,—whether the claim was filed for delay only.

*Judgment affirmed on main bill of exceptions; cross-bill reversed.*